## Fleming *et al. v.* Fulton.

Notarial records, when verified on oath, are made evidence, by statute, in certain cases.

Where the third day of grace falls on Sunday, payment of the note should be demanded on the Saturday previous, and notice sent on the next business day, which is Monday.

In this state, promissory notes are entitled to three days of grace.

Where a note was payable at a bank which had regular banking hours, and the notarial record stated that on such a day, without naming the hour, demand was made, it was held that the presumption would be that the demand was made in banking hours, in the absence of any showing to the contrary.

It seems that the notarial certificate of demand and protest of a note need not state that the certificate was made and certified on oath at the time the protest took place.

Where there is no contrariety of testimony, it will not be irregular for the court to instruct the jury that the evidence of demand and protest adduced is sufficient to charge the indorsers.

IN ERROR from the circuit court of the county of Madison.

This was an action of assumpsit in the court below by Fulton against Fleming, Moss & Porter, on the following promissory note:

$9,587 50.    Vicksburg, March 14th, 1836.

Three years after date we promise to pay to the order of H. K. Moss, nine thousand five hundred and eighty-seven dollars and fifty cents, value received, negotiable and payable at the Planters' Bank of the State of Mississippi, at Natchez.

FLEMING & BRUNETT.

Indorsed H. K. Moss, D. M. Porter, Wm. Montgomery, David M. Fulton.

To prove demand of payment and notice of non-payment to the indorsers, the plaintiff, on the trial below, produced a paper purporting to be a notarial record, in these words:

The State of Mississippi, Adams county.

I, James K. Cook, justice of the peace and ex officio notary public, in and for said county, residing in the city of Natchez,

Fleming *et al. v.* Fulton.

qualified according to law, do hereby certify, that on the 16th day of March, in the year 1839, I went to the banking house of the Planters' Bank of the State of Mississippi, in Natchez, and then and there presented for payment the original note, of which the following is a true copy, together with the indorsements on the back of said note. [Copy of the note.] And I then and there demanded payment of the said note according to its tenor and effect, and was answered by the teller of said bank that the said note would not be paid, whereupon I protested said note, and notified the parties thereto of said demand, non-payment and protest, and that the holders looked to them for payment, which notice was given at the time and addressed to and directed in the manner following, to wit: to H. K. Moss, at Jackson, Mi.; to H. K. Moss, at Brandon, Mi.; to D. M. Porter, at Madisonville, Mi.; to D. M. Porter, at Canton, Mi.; to D. M. Porter, at Cambden, Mi.; to D. M. Porter, at Sharon, Mi.; to Wm. Montgomery, at Canton, Mi.; to D. M. Fulton, at Canton, Mi.; delivered in person D. M. Fulton one notice for D. M. Porter, and left at the Mansion House in Natchez a notice to H. K. Moss, which notice he informed me he received—all of which said notices, directed to the parties respectively as aforesaid, were by me deposited in the post office at Natchez by nine o'clock, in time to go out by the first mail of the Monday next succeeding that on which said note was protested as aforesaid; which facts, then and there noted by me on my official record, constitute, as herein set forth, a full and true record of all that was done by me in the premises. In testimony whereof, I have hereunto set my hand and affixed my official seal, this 20th day of April, 1839.

[L. S.]                      JAS. K. COOK, J. P. and Notary.

State of Mississippi, Adams county.

Personally appeared before the undersigned, justice of the peace in and for said county, James K. Cook, who made oath that the within certificate of record contains the truth to the best of his knowledge and belief.             JAS. K. COOK,

Sworn and subscribed to before me, this twentieth day of April, 1839.                C. McLEAN, J. P.

To which the defendants objected, but the objection was over-

ruled and the certificate was read; to which the defendants excepted. The residence of the parties was then proved. The defendants then proved that the bank where the note was to be paid had regular banking hours, which were from ten o'clock a. m. till two p. m., after which the bank closed, though persons could get into the cashier's room after that time. This was all the testimony.

The defendants' counsel then moved the court to instruct the jury that, to charge an indorser of a note payable in bank which had regular business hours, the party must show a presentment, demand and refusal during such hours, and that when a note fell due and was protested for non-payment at two o'clock on Saturday evening, notice of such refusal and non-payment should be deposited in the post office for the indorser, in time to go out by the mail of the day next succeeding the demand and refusal; which instructions the court refused to give, but charged the jury that the presentment, demand and notice, as proved by the notarial record read, was sufficient to charge the indorsers. To which the defendants excepted. A new trial was moved, which was overruled and exceptions taken.

Hughes for plaintiff in error.

First. The notarial record should not have been read, because on its face it showed that the protest was made on a wrong day. The note fell due on the 14th day of March, and was protested on the 16th, which was on the second day of grace. It is insisted that Sunday was the last day of grace, (which is true,) and consequently that the protest should have been on Saturday. This is admitted to be the rule by mercantile law, in reference to foreign bills of exchange; but it is not so in reference to inland bills and promissory notes.

The statute (see Rev. Code, 463–4, sec. 6) provides that "every foreign or inland bill of exchange, which shall not be accepted by the person or persons, body politic or corporate, on which it shall be drawn, or, being accepted, shall not be paid on or before the *expiration* of three days after it shall become due, may be protested," &c.; and by the ninth section of the same statute, it is, among other matters, provided that "all bonds, obligations, bills single, promissory notes, and all other writings, for the payment of money

or any other thing, shall and may be assigned by indorsement," &c.; and the person or persons to whom such instruments, so payable, are assigned, may maintain an action against the person or persons who shall have indorsed or assigned the same, as in *cases of inland bills of exchange,*" &c.

By this as between indorsee and indorser, promissory notes are put upon the same footing with inland bills of exchange; that is, the indorsee may maintain an action, and recover against an indorser upon the same evidence, and in like manner, as he could on an inland bill of exchange. Upon an inland bill of exchange, by the section first recited, the party acceptor had until the expiration of the third day of grace. This statute is like the statute of England on the same subject, to wit: the statute of William III.; and upon that statute the protest cannot take place until the fourth day. See Lefltey *v.* Wells, 4 Term R. 176; Bay. on Bills, 260, and notes.

The law in reference to inland bills being that the protest must be on the fourth day, it follows as a necessary consequence, that the same is the law on notes between indorsee and indorser. It is admitted that it is not necessary to make a protest on an inland bill or promissory note, except to charge a party with damages, but if the mode of making or endorsing a demand is resorted to, it is insisted that the time and manner prescribed by the statute should be pursued.

But again: the notarial record should not have been read, because it is not such a record as is provided by the statute on the subject. See the Statute Laws of Mississippi, 456. Because, 1. the record was not made and certified on oath when the protest took place. The statute is, that *when* he shall protest he shall make and certify on oath. When he shall do one thing, at the same time he shall do another; on the same day that he protests, on the same day he shall certify and swear to the things done by him. The provision is not that he may protest on one day and certify on oath on the other; but at the time when he does one he shall do the other. There is no provision in the statute that he shall make a memorandum of the acts done by him, and when applied to by any person interested, shall make out and certify under oath what has been done by him. The word 'when' is used in the statute to fix the time at which the thing is to be done.

Fleming *et al. v.* Fulton.

The matters required to be certified on oath are things which would rest in memory, are liable to be forgotten, and it was therefore important that a record should be made of them at the time of doing them, before their existence should become doubtful by the lapse of time, want of memory, &c.

Again: the statute requires that a record should be made and certified on oath, and the manner of making that record is provided. A full and true *record* is to be made on oath, *by the noting on said record* whether demand was made, of whom and where, when notices were given and to whom, when the same were mailed and to whom directed, and every other fact in any manner touching the same, shall be distinctly and plainly set forth *in his notarial record;* and, when so made out and certified, it is to have the same force, &c. as if the notary was in court to testify.

It is gravely insisted that the paper which was offered in the court below, was such a record as that required by the statute. The paper itself shows that it was not his notarial record, because in it h e certifies, "which facts, then and there noted by me on my official record, constitute, *as herein set forth,* a full and true record of all that was done by me in the premises." If by him noted on his official record, as therein set out, there was then a record, and the paper is a mere certificate on oath of the contents of that record. It was not the record itself, but a statement that such a record was in existence. Whether such record was made and certified at the time, under oath, does not appear: no oath appears but to the pretended record.

It will scarcely be contested that the requirements of this statute are not an entrenchment upon the principles of the common law in regard to evidence; and that consequently it has to be construed strictly—and unless the requirements are all complied with, that the evidence cannot be read. A record is to be made under oath, and that is to be read in place of that record. A certificate of the contents of the record, sworn to, is offered in evidence, in lieu of the record. Will this do? But it has been insisted that the original record is not meant, but such an one as is offered in this case, because the notary has but one record, and that cannot be offered in evidence in the various courts where actions may be depending at one and the same time. To this it is answered—true, the record

cannot be at different places at the same time; but this does not prove that the party is without remedy. The remedy is provided by the rules of the common law. A copy, certified by the keeper of the record, can be read. See Starkie on Evidence.

The court will scarcely presume the legislature guilty of the foolishness of sanctioning such a record as the one offered in evidence; a certificate, made out, as appears by its face, long after the doing the acts which are required to be made a record, to which is attached an oath that that certificate is true to the best of the knowledge and belief of the affiant. The court will rather presume that it was the intention of the legislature that the notary, after making a demand, should first protest, and then immediately make a record of the acts done by him, by putting them on his notarial record and affixing to the same an affidavit of the truth of those facts; then there would be no swearing according to *knowledge and belief*, but the facts having just transpired would be fresh in his recollection, and to them a positive affidavit that they were true could be made. Suppose, however, it be decided that this record be read, and hereafter it should turn out, by the testimony of witnesses, that the facts set out in the record were not true, could the notary be convicted of perjury? It is believed he could not, because he has not sworn to the truth of the facts, but only that he believes the facts set out to be true. True, he says according to his *knowledge and belief*. This, however, if it means any thing, is nothing more or less than the common affidavit to bills and answers, that the facts, so far as stated of his own knowledge, are true, and, so far as stated of the knowledge or information of others, he believes them to be true. The facts were noted on his record at the time, and the knowledge he has on the subject is from an inspection of that record, and he believes that to be true. But that noting upon the record was not under oath, and, not having the sanction required by law, there will be no perjury.

Second. The instructions asked should have been given; and those given should not have been given.

The notary certifies that he made the demand on the 16th day of March, but does not state at what time the demand was made. The proof shows that there were regular business hours, which were from ten o'clock A. M. to two P. M. and there is no proof

that payment, even if the funds were deposited for the purpose, would have been made, at any other than during business hours; but the implication is strong, from the proof, that payment would not have been made. We are left therefore to conjecture as to the time of the demand, and whether payment was refused to be made, because of the want of funds, or because of an improper demand. If it be conceded for the present that the demand was made on the proper day, it does not necessarily follow that the demand was properly made. The business day of the bank was between or within the business hours, and unless demand was made within those hours, it was not made on the day.

On this question the court are referred to the case of Parker *v.* Gordon, 7 East's Rep. 385. In that case, the drawer accepted the bill, payable at Davison & Co.'s, his bankers, at the part of the town where Davison & Co. lived. Bankers shut up at six o'clock. The bill was not presented until after six, when the shop was shut up and the clerks gone. The action was against the drawer, and Lord Ellenborough held that this was not a good presentment, and nonsuited the plaintiff; and on motion for a new trial, the court held, that if a party took an acceptance, payable at a banker's, he bound himself to present the bill during the banking hours, and therefore the rule was refused.

The court here say, that by taking the bill payable at the banker's, he *bound* himself to present it during business hours; that is, the demand must be made during those hours, and no other part of the day would do; and being so bound, the time of presentment was material, and must be proven. If a party be bound to do a thing before a right can vest, then before the right can vest the thing which the party is bound to do must be done; the act is a condition precedent to the vesting of the right, and where an action is commenced to enforce the right, the act required to be done is a part of his title, and like all other matters fixing the right has to be proven. We admit that if it had been proven that any person was present at the time of the presentment, as agent of the bank or the maker of the note, to make answer in reference to such demand, then the presentment would have been good; but no such proof was made. It was proven, that after the business hours a person making a demand could get admission into the room of the

cashier, but this does not prove that the notary in this case did get into the cashier's room, but only that he might have obtained admission; nor does it prove that on that day the cashier or the clerk was there. These matters are all left to conjecture.

The case last referred to is found in a note to Bay. on Bills, 211. In the same note there is a still stronger case, which is this: the drawer accepted a bill, payable at his banker's; the only evidence of presentment was by a notary's clerk, between half after six and seven in the evening. The banking house was then shut, and the answer at the private door was, "no orders." Lord Ellenborough allowed plaintiff to take a verdict, with liberty to defendant to move to enter a non-suit; rule nisi, and on cause shown, the court thought the presentment too late. See the case reported in Maule and Selwyn, 28, Elford *v.* Lud. See also the case of Markham *v.* Planters' Bank, decided in the January term, 1841.

This authority is conclusive. The answer at the private door was, that no order had been given as to the payment, and this was not sufficient, for the obvious reason that it was not also proven who it was that gave the order; whether a person authorized or unauthorized. If the answer had been given by a person authorized by the bank, or the payer or acceptor, the proof would have been good; but no proof having been made as to a matter which was a part of the title of the plaintiff, no recovery could be had.

Again, the court charged the jury, that the presentment, demand, and refusal, as proven *by the notarial record,* was sufficient. This was clearly wrong. It was a charge upon the facts. There were other matters to be proven besides those contained in the certificate of the notary, which had to be proven, yet the court said these facts were proven by the record, which is shown by the record to be untrue. Thus far, at least, he was wrong.

Lea and Lea, for defendant in error.

For the plaintiffs in error are raised two questions: 1. Should the notarial record have been read to the jury? 2. Ought the court below to have given the instructions asked?

1. On the first point it is objected, that as to inland bills and promissory notes, the demand should be made on the fourth day, and not on the last day of grace, although it is admitted to be

otherwise in case of a foreign bill. To sustain this distinction, our statute, Rev. Code, 463-4, is relied on in connection with Leftley *v.* Wells, 4 Term. R. 170, cited Bayley on Bills, 260, and note.

In answer it is submitted, that the case cited turned wholly on another point, and the *obiter* in that case of one of the justices, from which the distinction is inferred, was controverted by the other justice, and is overruled and settled the other way conclusively. The dictum of the note maker is an error, without any case to sustain it at first, and with subsequent settled authority to the contrary showing that a demand may be made at any time of the third day, and not necessarily at the close of it. But the admission as to foreign bills negatives the position assumed as to inland bills and promissory notes, for, whatever may have been the practice under the English statute, ours makes the same rule as to all bills, foreign and inland and promissory notes—and the practice has been uniform as to all classes—and, if the terms are imperative to change the practice as to one class, it must be equally imperative as to all others. But the old practice is correct, as based on the legal principle of disregarding fractions of a day, allowing the whole day, and any part of it, for demand on the one hand, and the whole day and any part of it, for payment on the other.

It is also objected, that the notarial record is not in due form;— but the contrary is supposed, and the subject is familiar to the court. Miss. Laws, 456.

2. As to the second point: the refusal to give the charge asked for must be taken in connection with what was given, and the whole of the evidence. It must not be forgot, that no usage of the bank was proven; but only that it had what one called banking hours, from ten to two o'clock. And under this proof the court was asked to charge that plaintiff must show presentment, demand and refusal during such hours, *and* that when a note fell due and was protested for non-payment at two o'clock on Saturday evening, notice of such refusal and non-payment should be deposited in the office for the indorsers in time to go out by the mail of the day next succeeding the demand and refusal. The latter part of this charge is not law, for the mail of Monday is in time; and the court was therefore at liberty to refuse the entire charge of which this was a part, as required. But the former part of the charge required is not

41*

Fleming *et al. v.* Fulton.

law, for in the absence of contrary usage, a demand is not necessarily confined to the ordinary business hours, but, if the holder or notary, at his peril, can find the proper officer or agent of the bank, at the bank, at another hour, he may then demand, as in cases of common persons; and in all such dealings with bankers, the holder only runs the hazard of not finding a proper person at the proper place during the day to give the proper answer. And their having ordinary hours of business is not an exception *per se*. The court was therefore right in refusing the charges required. The recent case in this court, Markham *v.* the Planters' bank, confirms this view, being decided expressly on the proved usage, as an exception. 5 How. 397.

The charge which was given, when properly understood, is correct. The objection is, that it was a charge on the facts. Not so, but merely on the law arising on the given facts, so far as they were shown by the notarial record; and it was not error to tell the jury that the notarial record was sufficient evidence, in the absence of any thing to the contrary, at least, of the facts mentioned in the record, to charge the indorsers, in connection, of course, with the other proof—meaning manifestly, that the proof necessary to come from the notary to charge the indorsers was embodied in his record. The general proof of presentment, demand, and refusal at the place and on the day did make legal *prima facie* evidence sufficient, and so as to the sending of notice the record is sufficient, and the charge amounts to this and no more. And the other proof in connection with this makes a complete case.

Mr. Justice TURNER delivered the opinion of the court.

This was an action on the case on a promissory note made by Fleming and Bennett, payable to the order of H. K. Moss, and by him and the other defendant indorsed to D. M. Fulton. The note was payable three years after date, dated 14 March, 1836, and payable at the Planters' bank at Natchez. The cause was tried against all the defendants on the general issue, and a verdict rendered in favor of the plaintiff. A motion for a new trial was made and overruled, and a bill of exceptions taken. The defendants sued out this writ of error, and have assigned the following errors, viz:

1. The record does not show that the jury were sworn to try

Fleming *et al. v.* Fulton.

any issue between the parties, or that they were ever sworn in this cause at all.

2. The court erred in permitting the notarial record to be read in evidence.

3. The court erred in refusing the charges asked by the counsel for the defendant below.

4. The court erred in charging the jury in manner and form as set forth in the bill of exceptions.

5. The court erred in refusing a motion for a new trial.

As to the first error assigned, the record states that, "this day came the parties aforesaid, by their attorneys, whereupon came a good and lawful jury to try the issue joined, (giving their respective names) who being duly sworn, upon their oaths do say, we the jury find," &c. By this it sufficiently appears that the jury were sworn to try the issue between these parties and in this cause.

As to the several other assignments of error, the counsel have very properly reduced them to two propositions.

First. Should the notarial record have been read to the jury?

Second. Ought the court to have given the instructions asked?

The first question is easily answered. The notarial record is made evidence by law. The sufficiency of the facts set forth therein, to entitle the plaintiff to recover, is another matter.

The second question resolves itself into two propositions: first, should the court have given the instructions asked for; and secondly, were the instructions given, contrary to law.

The bill of exceptions sets forth the note sued on and the notarial certificate. The note was payable three years after date, was dated March 14, 1836, and was protested for non-payment, on the 16th day of March, 1839, being Saturday. The third day of grace, it is admitted, would have been *Sunday.* It was therefore right, and according to universal usage, to make the demand on the day previous, and to forward the notices of protest on the next *business* day, which was Monday; and this was done. But it is contended, that in cases of promissory notes, four days of grace are allowed. This has not been the usage in this state; and it would be dangerous, and extremely disastrous, now to change the rule, so as to apply to past transactions. Retrospective acts, even of the legislature, are generally considered with distrust, and almost equal to

ex post facto laws.   1 How. 182; Davis *v.* Minor, 20, J. R. 372; 2 How. 784.   But, the act of 1822, Rev. Code, p. 463, sec. 6 and 9, settles this matter.   It provides that every foreign or inland bill of exchange which shall not be paid on or before the expiration of three days after it shall become due, may be protested, &c.; and the ninth section provides that the assignees of bills, bonds, notes, &c., may maintain an action against the person who shall have indorsed or assigned the same, as in cases of inland bills of exchange.

The instructions which the counsel of the defendants below asked the court to give to the jury, are as follows, viz: that to charge an indorser to a note payable in bank, which had regular business hours, the party must show a presentment, demand, and refusal, during such hours, and that when a note fell due and was protested for non-payment at two o'clock on Saturday evening, notice of such refusal and non-payment should be deposited in the office for the indorsers, in time to go out by the mail of the day next succeeding the demand and refusal; which instructions the court refused to give, but charged the jury that the presentment, demand, and notice, as proved by the notarial record, read as aforesaid, was sufficient to charge the indorsers.

I consider that the instructions asked for were improper, because the evidence exhibited, did not warrant such a charge.   The evidence was, that the Planters' bank at Natchez had regular business hours, which were from ten o'clock A. M. till two o'clock P. M., after which the bank closed, though persons could get into the cashier's room after that time.   The notary certifies that on the 16th March, 1839, he went to the banking house of the Planters' bank of the state of Mississippi in Natchez, and then and there presented for payment the original note, &c., and demanded payment, &c., and was answered by the teller of said bank, that the said note would not be paid.

The instructions called for had reference to a different state of facts from these.   The notary does not state the hour of the day, and it must be presumed, until the contrary appears, that the presentment was at the proper hour.

In the case reported in 5 Howard, it appeared that the demand was made *before* the expiration of the business hours of the bank,

and that the note was withdrawn from the bank before that hour. This was considered not sufficient to constitute a good demand at bank; but in the case before us, no such evidence appears.

The residue of the instruction, as to the time of depositing the notices in the post office, was also improper to be given, inasmuch as the next day after the demand was Sunday.

The charge of the court, that the presentment, demand, &c., as proved by the notarial record, was sufficient to charge the indorsers, is also complained of. But we see nothing exceptionable in it. The court did not instruct the jury to find for the plaintiff on the evidence before them, nor as to the weight of evidence. There was no contrariety of evidence before the jury, about which any dispute could arise, and the question was whether the evidence, as stated in the official record of the notary, was sufficient, in law, of demand, refusal and notice; and the court being called on for instructions, stated, and we think properly, that that evidence, uncontradicted, was sufficient to establish those facts. 5 Howard, 500, 501.

The only remaining ground taken in argument of the counsel of the plaintiff in error, is, as to the sufficiency of the statement and affidavit of the notary, made and certified under the statute, because it was not made and certified on oath *when* the protest took place, to wit: on the same day.

This is the first time we have been called on to give this construction to this statute, and I have taken some time to reflect on it.

The act of 1833 was passed to promote the general convenience of suitors, notaries, &c. It requires the notary, when he shall protest any such instrument, to make and certify, on oath, a full and true record of what shall have been done thereon by him in relation thereto, according to the facts, by noting thereon whether the demand was made, notice given, to whom, &c. &c.; and when so made out and certified on oath, it shall have the same validity, &c. as if the notary were personally present in court. Statute Laws, 457.

In the first place, the fact that this record was *not* made immediately after the protest took place, does not appear. We have not the deposition of James K. Cook, the notary, in this case, and he

was not present to testify in court. We have only a certificate given by him, to the parties interested, of the facts set forth in his record, made out and sworn to at a day subsequent to the making up of his record. It seems that the notary made out and issued two notarial certificates—first, the usual one of the protest of the note; and secondly, that made under the statute, in which he states and certifies that he noted those facts so certified, *then and there,* to wit: on the 16th March, 1839, on his official record; and dates his certificate, of what he had so done, on the 20th April, 1839, and made oath to it on the same day.

This statute, being a remedial one, must receive a liberal, reasonable construction. Would it be reasonable that a notary public, when he sits down to record the acts done by him, in making demand, &c. of promissory notes, &c. one or many, should call in a justice of the peace to swear him as he makes his entries on his record? This would seem to me to be as unreasonable as it is unnecessary. The notary is a sworn officer. The law prescribes his duties, and what he does he does on oath. He makes up his record of the acts done by him in each particular case. They are his own entries; and at his leisure—that is, when his time admits of so doing—he makes out his notarial certificate from his record, certifies and swears to it as the law directs, and hands over the note and the certificates to the parties interested. It is a general rule that the records of the official acts of public officers are evidence of themselves, and that duly certified copies thereof are admitted as evidence in courts of justice, even from other states. Our law, then, by prescribing this new duty to a notary public, has enacted nothing inconsistent with general principles. But that part of the act which requires an official record to be certified on oath, is a novelty.

Judgment affirmed.